## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **IN RE: ABBOTT LABORATORIES, ET AL., PRETERM INFANT NUTRITION PRODUCTS LIABILITY LITIGATION**<br><br>**This Document Relates To:**<br>***Abdullah v. Mead Johnson & Co. et al.***<br>**Case No. 2:22-cv-01684 (E.D. Pa.)** | **Case No. 1:22-cv-02511**<br>**MDL No. 3026** |

## PLAINTIFF'S MOTION TO REMAND

Dated: May 17, 2022

## TABLE OF CONTENTS

INTRODUCTION ......................................................................................................................... 1

BACKGROUND ......................................................................................................................... 2

LEGAL STANDARD ................................................................................................................. 3

ARGUMENT .............................................................................................................................. 4

    I.       Abbott's Assertions of Fraudulent Joinder Fail. ...................................................... 4

        A.    Pennsylvania Permits Negligence Claims Against Hospitals, and Abbott's
                Reliance on Informed Consent Case Law is Inapposite. ........................................ 5

        B.    Plaintiff's Intention to Proceed Against the Pennsylvania Hospital
                Defendants Is Irrelevant and, in Any Event, Abbott Does Not Show that
                Plaintiff Does Not Intend to Proceed Against the Pennsylvania Hospital
                Defendants. ............................................................................................................. 8

    II.      The Court Should Award Fees and Costs. ............................................................. 10

CONCLUSION........................................................................................................................... 12

## INTRODUCTION

Plaintiff Terraine Abdullah and her child, H.S., are citizens of Pennsylvania, and so are Defendants The Pennsylvania Hospital and Penn Medicine (collectively, the "Pennsylvania Hospital Defendants"). *See* Compl. ¶¶ 3, 6–7. Under jurisdictional principles that have been well-settled since 1806, there is no complete diversity and thus no diversity jurisdiction. *Strawbridge v. Curtiss*, 7 U.S. 267, 267 (1806). And yet diversity is the only possible basis for this Court's subject-matter jurisdiction. How then does Defendant Abbott Laboratories ("Abbott") justify invoking the jurisdiction of this Court? Its sole answer is so-called "fraudulent joinder," a doctrine that imposes a "heavy burden" of persuasion on the moving party, one that Abbott cannot possibly satisfy. To wit, Abbott must show that Plaintiff has *no chance of success* on *any* of her claims against the Pennsylvania Hospital Defendants. But the Pennsylvania Supreme Court has repeatedly and unequivocally authorized the negligence claims brought here against hospitals.

Abbott knows that it cannot keep this case in federal court. But that is not its cynical aim. It wishes instead to throw sand in the gears of justice, hoping that this Court will deal with the preliminary administrative matters necessary to govern a newly consolidated proceeding before turning to Plaintiff's motion, thereby significantly delaying Plaintiff's day in court.[1] That delay comes at a heavy cost to Plaintiff, who deals daily with the effects of H.S.'s injuries.

---

[1] Abbott knows that Plaintiff will challenge its groundless removal because plaintiffs in related matters in other state courts already have. Shortly before Abbott removed this case, plaintiffs in similar proceedings (which Abbott also removed on similar erroneous grounds) challenged the removals in those cases on the same basis as Plaintiff does here. Abbott ignored the plaintiffs' explanation in those cases for why the removals are themselves frivolous and continued its play for delay here.

1

Abbott's obstruction should not be countenanced. This Court should remand this matter to state court with dispatch, and award Plaintiff fees and costs to discourage similar, dilatory removal attempts in the future. *See* 28 U.S.C. § 1447(c) ("An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal.").

## BACKGROUND

Plaintiff and H.S. are a family whose lives were forever changed by a devastating disease called necrotizing enterocolitis (NEC). When a baby is afflicted with NEC, her intestinal tissue dies, often leading to deadly bacteria leaching into the infant's belly or blood. H.S. was born prematurely in 2006 and developed NEC shortly thereafter. Compl. ¶¶ 11–13. NEC caused significant injuries in her intestines, and she will live with the permanent carry-on effects of those injuries for the rest of her life, including recurring gallstones.

Cow's milk-based infant nutrition products, like those made by Mead Johnson & Company, LLC, Mead Johnson Nutrition Company (together, "Mead"), and Abbott (collectively, "the Manufacturer Defendants"), and fed by the Pennsylvania Hospital Defendants, drastically increase the risk that a premature infant will develop NEC. On March 24, 2022, Plaintiff filed a complaint in the Court of Common Pleas of Philadelphia County. Plaintiff asserted claims against the Manufacturer Defendants for strict liability design defect, strict liability failure to warn, negligence, intentional misrepresentation, and negligent misrepresentation. Plaintiff also asserted claims against the Pennsylvania Hospital Defendants, who are Pennsylvania citizens, for negligent failure to warn and corporate liability before feeding these harmful products to H.S.

On May 2, 2022, Abbott removed this case to federal court, asserting diversity jurisdiction on the specious ground that the Pennsylvania Hospital Defendants were fraudulently

2

joined.  Abbott stated in its Notice of Removal that "Mead Johnson . . . has consented to removal."  Not. at 6–7.  The case was initially removed to the Eastern District of Pennsylvania.  That same day, Abbott filed a Notice of Potential Tag-Along Action before the JPML.  On May 4, 2022, the JPML entered Conditional Transfer Order (CTO-3), transferring this case to this Court.  That Order was finalized on May 12, 2022.

Plaintiff now moves to remand the case to state court.

## LEGAL STANDARD

The rules governing removal are well-settled.  A defendant may remove a case from state court only if the district court originally would have had jurisdiction.  *Whelchel v. Briggs & Stratton Corp.*, 850 F. Supp. 2d 926, 931 (N.D. Ill. 2012)[2]; 28 U.S.C. § 1441(a).  That is because "[f]ederal courts are courts of limited jurisdiction, possessing only that power authorized by Constitution and statute."  *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (quotations omitted).  Federal courts lack diversity jurisdiction pursuant to 28 U.S.C. § 1332(a) if the parties are not completely diverse, and defendants may remove a case under 28 U.S.C. § 1441(b) only if there is complete diversity *and* no defendant is a citizen of the state in which the action is brought.  The removal statute is strictly construed, and any doubts about the right of removal are resolved in favor of state-court jurisdiction and remand.  *Whelchel*, 850 F. Supp. 2d at 931.  Where a case is improperly removed, "the case shall be remanded[.]"  28 U.S.C. § 1447(c).

Under Seventh Circuit precedent, defendants "must bear a heavy burden to establish fraudulent joinder."  *Poulos v. Naas Foods, Inc.*, 959 F.2d 69, 73 (7th Cir. 1992).  Specifically,

---

[2] "[T]he law of the circuit where the transferee court sits governs questions of federal law in MDL proceedings," including questions of remand and removal.  *In re Bridgestone/Firestone, Inc., Tires Prod. Liab. Litig.*, 256 F. Supp. 2d 884, 888 (S.D. Ind. 2003) (citing *In re Korean Air Lines Disaster of September 1, 1983*, 829 F.2d 1171, 1176 (D.C. Cir. 1987)).  Therefore, Seventh Circuit law applies to the removal and remand issues presented in this case.

"[t]he defendant must show that, after resolving all issues of fact *and law* in favor of the plaintiff, the plaintiff cannot establish a cause of action against the in-state defendant. At the point of decision, the federal court must engage in an act of prediction: is there any reasonable possibility that a state court would rule against the non-diverse defendant?" *Id.* "In other words, the defendant must show that the plaintiff's claims against non-diverse defendants have 'no chance of success.'" *Schumacher v. Sterigenics U.S., LLC*, 394 F. Supp. 3d 837, 847 (N.D. Ill. 2019) (quoting *Poulos*, 959 F.3d at 73). Courts in this circuit have noted "that the burden is even more favorable to the plaintiff than the standard that applies to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6)." *Schur v. L.A. Weight Loss Centers, Inc.*, 577 F.3d 752, 764 (7th Cir. 2009) (collecting cases); *see also Schumacher*, 394 F. Supp. 3d 837, 847 n.4.

Notwithstanding what Abbott said in removing this case, courts may not consider the plaintiff's motives in naming a nondiverse defendant when adjudicating fraudulent joinder. *See Schur*, 577 F.3d at 763 n.9 (stating that the doctrine is "typical[ly]" invoked on the basis "that a plaintiff brought a claim against a nondiverse defendant that simply has no chance of success, *whatever the plaintiff's motives*" (internal quotation marks and citation omitted) (emphasis added)); *see also Schumacher*, 394 F. Supp. 3d at 847 n.4 (declining invitation to "scrutinize Plaintiff's motives for joining the non-diverse defendants").

Applying this standard, Abbott cannot meet its "heavy burden." It barely deigns to try, prioritizing delay over its duty to this Court. Remand is compelled.

## **ARGUMENT**

### I.  **Abbott's Assertions of Fraudulent Joinder Fail.**

Abbott's removal of this action hinges on its assertion that the Pennsylvania Hospital Defendants, who Abbott admits are citizens of Pennsylvania, were not "properly joined." Not at

9–10. Abbott's assertion of fraudulent joinder, grounded in inapposite caselaw and vague references to "indicia" of Plaintiff's intent, is baseless.

### A.    Pennsylvania Permits Negligence Claims Against Hospitals, and Abbott's Reliance on Informed Consent Case Law is Inapposite.

Abbott concedes that negligence claims may be brought against hospitals—the exact claims Plaintiff asserts against the Pennsylvania Hospital Defendants.  Not. at 11–12.  That concession is compelled by black-letter Pennsylvania law, which holds a hospital "liable if it fails to uphold the proper standard of care owed the patient, which is to ensure the patient's safety and well-being while at the hospital.  This theory of liability creates a nondelegable duty which the hospital owes directly to a patient."  *Thompson v. Nason Hosp.*, 591 A.2d 703, 707 (Pa. 1991).  As Abbott recognizes, *see* Not. at 12, hospitals owe four duties to patients in this context: "(1) a duty to use reasonable care in the maintenance of safe and adequate facilities and equipment; (2) a duty to select and retain only competent physicians; (3) a duty to oversee all persons who practice medicine within its walls as to patient care; and (4) a duty to formulate, adopt and enforce adequate rules and policies to ensure quality care for the patients."  *Id.* (citations omitted).

Plaintiff specifically alleges breaches of these duties.  Compl. ¶¶ 135, 142.  The Pennsylvania Hospital Defendants knew or should have known about the risks of cow's milk-based formula to preterm infants.  Compl. ¶¶ 56–57, 59–61.  And yet the Pennsylvania Hospital Defendants, rather than sharing those risks with the medical professionals who could have warned the patients, decided instead to cultivate relationships with the Manufacturer Defendants, relationships that provide significant financial benefits through free or significantly discounted cow's-milk based products.  *Id.* at ¶¶ 61–62.  Under the applicable *Thomson* standard, a Pennsylvania state court will easily hold, on preliminary objections—Pennsylvania's equivalent

of a motion to dismiss—in particular, that the Pennsylvania Hospital Defendants' feeding protocols for at-risk, preterm infants were grossly inadequate. Plaintiff surely has a chance of success, which dooms Abbott's resort to fraudulent joinder.

Unable to defeat the claims Plaintiff actually lodges, Abbott attacks a strawman by recasting Plaintiff's claims as ones sounding in the informed consent of the consumer. Abbott repeats over and again that "informed consent" claims are not always allowed against hospitals under Pennsylvania law. Not. at 12–14. But the law of informed consent is irrelevant here. The claims against the Pennsylvania Hospital Defendants are grounded in its cost-driven decision to push cow's-milk based formula and fortifier without telling *even its own medical professionals*, let alone the parents of premature patients, about the risks that it knew or should have known. When the Pennsylvania Hospital Defendants chose to hide the risks from its own staff and instead focus on the financial benefits of formula—secured with cozy connections to the Manufacturer Defendants—the Pennsylvania Hospital Defendants "fail[ed] to uphold the proper standard of care owed the patient[.]" *Thompson*, 591 A.2d at 707. That is a textbook example of how hospitals can be found negligent under Pennsylvania law because the Pennsylvania Hospital Defendants, in placing profits over patient welfare, abandoned their duty to "ensure the patient's safety and well-being while at the hospital." *Id*. Arguing that hospitals may not be sued for failure to seek informed consent in certain circumstances under Pennsylvania law is a strawman that does not address the "reasonable possibility" that a Pennsylvania court would find liability on the causes of action actually pleaded by Plaintiff.[3]

---

[3] Even if Plaintiff's Complaint could plausibly be contorted to assert informed consent claims, Abbott is nevertheless incorrect that there is *no possibility* Plaintiff could state an informed consent claim against the Pennsylvania Hospital Defendants. Contrary to Abbott's assertion that "Pennsylvania law applies the doctrine of informed consent only to cases involving surgical or operative procedures," Not. at 14–15, some courts have recognized the viability of informed

Beyond its inapt attack on the viability of unasserted claims, Abbott also suggests that "Plaintiff does not assert that the [Pennsylvania] Hospital Defendants breached any duty that they owe under *Thompson*." Not. at 13. That bald assertion simply blinkers Plaintiff's complaint. The one allegation Abbott actually engages with is the Pennsylvania Hospital Defendants' failure "to formulate, adopt, and enforce adequate rules and policies to instruct its healthcare professionals and medical staff on the information that should be provided to parents in order to make an informed choice about whether to allow their babies to be fed the Defendant Manufacturers' products, notwithstanding their substantial risk." Compl. ¶¶ 135(d), 142(e). On its face, that allegation directly relates to the fourth *Thompson* factor because it addresses the Pennsylvania Hospital Defendants' "duty to formulate, adopt and enforce adequate rules and policies to ensure quality care for the patients." *Thompson*, 591 A.2d at 707.

The remainder of Plaintiff's allegations against the Pennsylvania Hospital Defendants, which Abbott ignores, show that Plaintiff's claims against those Defendants directly relate to the *Thompson* duties. For example, Plaintiff's claims relate to the Pennsylvania Hospital Defendants' negligent failure (1) to warn about the dangers of the infant nutrition products that H.S. was fed; (2) to warn or instruct its professionals and staff on that information; (3) to prevent

---

consent claims where the patient is injected with a substance. *See Karibjanian v. Thomas Jefferson Univ. Hosp.*, 717 F. Supp. 1081, 1084 (E.D. Pa. 1989) (upholding informed consent claim based on injection of a drug); *Parents United for Better Sch., Inc. v. Sch. Dist. of Philadelphia Bd. of Educ.*, 978 F. Supp. 197, 206–07 (E.D. Pa. 1997), *aff'd*, 148 F.3d 260 (3d Cir. 1998) (recognizing same); *see also Zaman v. Schultz*, 19 Pa. D. & C. 309, 310–11 (Com. Pl. 1933) (treating extraction of blood for a transfusion as an operation). The Complaint alleges that the Pennsylvania Hospital Defendants' staff fed H.S. the Manufacturer Defendant's products, which in turn caused her injuries. Compl. ¶¶ 12–14. The feeding of premature babies—which is done enterally—is akin to an injection. Thus, even if Abbott were correct that Plaintiffs' Complaint asserts informed consent claims, removal would still be improper because it is reasonably possible that a Pennsylvania court would find that Plaintiff's Complaint states a cause of action against the Pennsylvania Hospital Defendants.

the Manufacturer Defendants from misrepresenting information regarding their products; and (4) to formulate, adopt, and enforce rules and policies to warn, inform, and instruct regarding those products. *See* Compl. ¶¶ 121, 135. These allegations explicitly relate to the Pennsylvania Hospital Defendants' well-established duties "to oversee all persons who practice medicine within its walls as to patient care" and "to formulate, adopt and enforce adequate rules and policies to ensure quality care for the patients." *Thompson*, 591 A.2d at 707. Such claims—against a hospital, and under Pennsylvania law—are not only *hypothetically* viable, they have been found viable by Pennsylvania courts. *See, e.g.*, *Welsh v. Bulger*, 698 A.2d 581, 586 (Pa. 1997) (reversing grant of summary judgment in favor of hospital where plaintiff demonstrated failure to report and monitor child's condition and failure to provide a qualified surgeon, which were violations of duty to oversee all persons who practice medicine within its walls as to patient care, to retain only competent physicians, and formulate and enforce policies to ensure quality care).

**B.      Plaintiff's Intention to Proceed Against the Pennsylvania Hospital Defendants Is Irrelevant and, in Any Event, Abbott Does Not Show that Plaintiff Does Not Intend to Proceed Against the Pennsylvania Hospital Defendants.**

Abbott's only other argument for removal is its baseless assertion that Plaintiff does not intend to proceed against the Pennsylvania Hospital Defendants. But Plaintiff's intent is not part of the Court's fraudulent joinder inquiry. Indeed, the only consideration is whether there exists "any reasonable possibility that a state court would rule against the non-diverse defendant." *Poulos*, 959 F.2d at 73. Because Plaintiff certainly has a chance of success on the merits of her claim against the Pennsylvania Hospital Defendants, the Court's inquiry ends. The Court should not countenance Abbott's "attempt to shift the test in their favor by framing the inquiry in more generous terms than the Seventh Circuit has endorsed." *Schumacher*, 394 F. Supp. 3d at 847 n.4.

8

But even if Plaintiff's intent could properly be considered in adjudicating fraudulent joinder, Abbott's strained argument fails. Nothing in the Complaint would suggest that Plaintiff does not intend to prosecute its claims against the Pennsylvania Hospital Defendants. So Abbott instead ask this Court to "look beyond the allegations contained in the Complaint to other indicia of fraudulent joinder." Not. at 15. No such indicia exist, however, because Plaintiff is prepared to aggressively pursue their claims against the Pennsylvania Hospital Defendants now.

The indicia to which Abbott appeals are the "general allegations" and the history of the litigation. As to the "general allegations," Abbott focuses primarily on the number of paragraphs in the complaint addressing the Pennsylvania Hospital Defendants, stating that only seven of 148 paragraphs address the Pennsylvania Hospital Defendants. Abbott cannot muster a single citation for this radical proposition, because no case has ever held that federal subject-matter jurisdiction somehow springs into being if plaintiffs do not spill enough ink pleading about the resident defendants. That is for good reason. Jurisdictional rules should be clear. *Knudsen v. Liberty Mutual Insurance Co.*, 411 F.3d 805, 806 (7th Cir. 2005); *In re Kilgus*, 811 F.2d 1112, 1117 (7th Cir. 1987). And nothing would undermine that principle more than the count-the-paragraphs approach to subject-matter jurisdiction Abbott has conjured. But even if Abbott had some basis for its concocted rule, it ought to have the decency to properly apply it. Abbott's count is off *by a factor of five*. Indeed, the *last 35 paragraphs* of the 148-paragraph complaint are allegations against the Pennsylvania Hospital Defendants.

And there is no "history" of this litigation to point to, let alone a record demonstrating that Plaintiff intends to abandon claims against the Pennsylvania Hospital Defendants. These complaints were filed roughly one month ago, so discovery has not even commenced. But when it does, undersigned counsel represents, as officers of this Court, that they intend to pursue

9

discovery against the Pennsylvania Hospital Defendants. In fact, the sole case cited by Abbott

on this point is instructive. In *In re Zoloft*, the court was persuaded by the fact that other

plaintiffs alleging similar claims "regularly failed to propound discovery on [the fraudulently

joined defendant] and often . . . voluntarily dismissed [that defendant] as a named defendant." *In*

*re Zoloft Prod. Liab. Litig.*, 257 F. Supp. 3d 717, 720 (E.D. Pa. 2017). There is no such history

here, and there will not be once the state court litigation proceeds to the discovery phase.

      Absent evidence, or even indicia, that Plaintiff has no intent to pursue claims against the

Pennsylvania Hospital Defendants, Abbott retreats to its flawed argument that the claims against

those Defendants are not viable under Pennsylvania law. That is not a separate argument for

fraudulent joinder, and as explained above it is a position based on miscasting and

misrepresenting the actual claims Plaintiff asserts.

## II.    The Court Should Award Fees and Costs.

      Because Abbott lacked an objectively reasonable basis for removing this case, Plaintiff

requests that the Court award attorneys' fees. *See* 28 U.S.C. § 1447(c) ("An order remanding the

case may require payment of just costs and any actual expenses, including attorney fees, incurred

as a result of the removal.").

      The law of Pennsylvania is clear: An injured plaintiff may bring negligence claims

against a hospital, and thus the Pennsylvania Hospital Defendants were not fraudulently joined in

this action. Not only is the law clear, Abbott and Mead *know* it to be clear. On April 27, 2022,

before Abbott removed this action, plaintiffs in similar proceedings facing similarly specious

removals filed motions to remand that explained the very errors found in the removal here.[4] But

---

[4] *See, e.g.*, *LaFond et al. v. Mead Johnson & Co., LLC, et al.*, 2:22-cv-00724, Removed
4/27/2022, United States District Court for the Eastern District of California (Sacramento);
*Thomas et al. v. Mead Johnson &Co., LLC, et al.*, 4:22-cv-2460, Removed 4/21/2022, United
States District Court for the Northern District of California (San Francisco/Oakland); *Tracy et al.*

instead of bowing to the reality of those plaintiffs' claims against hospitals, Abbott instead chose to ignore the contradictory caselaw and baselessly remove the matter to this Court, "impos[ing] additional costs on both parties, and wast[ing] judicial resources." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 140 (2005). Abbott's Notice of Removal here did not even attempt to address the many reasons it knew that removal was foreclosed by the law. Instead, Abbott, lured by the possibility of a delay, plowed ahead with the same baseless removal arguments, recasting Plaintiff's claims as something they are not, all in the hope nobody would rule on them for months.

Fees are especially warranted because of Abbott's improper gamesmanship in getting this Action transferred to this MDL. *See id.* at 141 (allowing fees if the removing party "lacked an objectively reasonable basis for seeking removal"). Abbott has a clear motivation for removing this case and asking that it be sent to this nascent MDL. Abbott hopes for long delay and that this case will languish while this Court creates the MDL from scratch, even if that path lands the case right back in state court where it should have been all along. Filing a removal notice for the mere tactical advantage of delay in the face of no plausible argument that a federal court has subject matter jurisdiction is the definition of gamesmanship and Abbott should be held accountable for doing it here (and in every other similar case).

---

*v. Mead Johnson & Co. LLC, et al.*, 3:22-cv-02480, Removed 4/22/2022, United States District Court for the Northern District of California (San Francisco/Oakland). In those instances, Defendants' cited case law that only foreclosed strict-liability claims against a medical practice—not the negligence claims asserted by the plaintiffs.

## **CONCLUSION**

Because Abbott's removal is a calculated and baseless scheme meant only to delay Plaintiff's day in court, this case must be remanded immediately, with fees and costs imposed on Abbott.

Dated: May 17, 2022                Respectfully submitted,

*/s/ Ben Whiting*

Ashley Keller (IL Bar No. 6300171)
Ben Whiting (IL Bar No. 6307321)
**KELLER POSTMAN LLC**
150 N. Riverside Plaza, Suite 4100
Chicago, Illinois 60606
Telephone: (312) 741-5220
Email: ack@kellerpostman.com
Email: ben.whiting@kellerpostman.com

Alexandra M. Walsh (DC Bar No. 490484)
**WALSH LAW PLLC**
1050 Connecticut Ave, NW, Suite 500
Washington, D.C. 20036
Telephone: (202) 780-4127
Fax: (202) 780-3678
Email: awalsh@alexwalshlaw.com

*Attorneys for Plaintiffs*

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 17, 2022, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and that the foregoing document is being served on all counsel of record or parties registered to receive CM/ECF Electronic Filings.


*/s/ Ben Whiting*
Ben Whiting